UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA

                Plaintiff,

   -against-

ONE HUNDRED and THREE
THOUSAND SEVEN HUNDRED and
TEN DOLLARS and NO CENTS ($103,710.00)
et al.,

                Defendants *in rem*.
------------------------------------------------------X

**MEMORANDUM AND ORDER**

13 CV 4995 (CBA)

On September 6, 2013, the United States (the "government") commenced this Civil Forfeiture action *in rem*, pursuant to 21 U.S.C. § 881(a), seeking to forfeit to the government approximately $103,710.00 in United States currency, and 49 assorted money orders with a combined value of approximately $35,900.00 (collectively, the "Defendant Funds"), which were seized from the person and luggage of Alvin Mulero-Rosario ("Mulero") on February 4, 2013. Currently pending before this Court is the government's motion to amend the Complaint to add an additional asset to this forfeiture action – namely, approximately $61,894.00 in United States currency seized from Roberto Oliveras-Calderon ("Oliveras") on the same date, February 4, 2013.[1]

---

[1] On June 18, 2014, the government filed a letter seeking to amend the Complaint to add the additional funds, and for an extension of time to file a Complaint as to such funds from June 30, 2014 until 15 days after the motion to amend was decided, pursuant to 18 U.S.C. § 983(a)(3)(A). At a status conference held on June 30, 2014, the undersigned orally granted plaintiff's request for an extension of its June 30 deadline, and set a briefing schedule for formal briefing of the motion to amend the Complaint. On July 31, 2014, plaintiff filed a motion to amend the Complaint, pursuant to this Court's scheduling Order.

1

For the reasons set forth below, the Court grants the government's motion to amend.

## FACTUAL BACKGROUND

A. The Seizures

According to the Complaint and the proposed Amended Complaint, on February 4, 2013, agents of the Drug Enforcement Agency ("DEA") approached Roberto Oliveras-Calderon as he was attempting to board JetBlue Flight 703 bound from John F. Kennedy International Airport to San Juan, Puerto Rico. (Compl.[2] ¶ 14; Am. Compl.[3] ¶ 14). When questioned by the agents as to who he visited and where he stayed while in New York, Oliveras was unable to provide any information. (Compl. ¶ 15; Am. Compl. ¶ 15). When asked if he possessed a substantial amount of money, Oliveras denied that he did. (Compl. ¶ 15; Am. Compl. ¶ 15).

Pursuant to Oliveras' consent, the agents searched his carry-on luggage and discovered large amounts of United States currency hidden throughout his clothes, secreted in a pair of shoes, and contained in white envelopes secured by rubber bands. (Compl. ¶¶ 15-16; Am. Compl. ¶¶ 15-16). During a consent search of his person, agents also discovered additional currency in Oliveras' jacket and fanny pack. (Compl. ¶ 16; Am. Compl. ¶ 16). When asked about the source of the currency, Oliveras could not provide an explanation (Compl. ¶ 17; Am. Compl. ¶ 16), but at one point claimed to have found the money on the street in New York City. (Am. Compl. ¶ 17).

---

[2]Citations to "Compl." refer to the original Complaint filed in this action.

[3]Citations to "Am. Compl." refer to the government's proposed Verified Amended Complaint in Rem, attached as Exhibit E to the Declaration of AUSA Matthew Silverman in Support of Plaintiff's Motion to Amend the Complaint, dated July 31, 2014 ("Silverman Decl.").

2

Oliveras informed the agents that there were additional monies concealed in his checked luggage and he consented to a search. (Compl. ¶ 17; Am. Compl. ¶ 18). While in the process of obtaining Oliveras' checked luggage, the agents learned that Oliveras, together with his travel companion, Mulero, had checked five pieces of luggage. (Compl. ¶ 18; Am. Compl. ¶ 19). During the search of Oliveras' two pieces of checked luggage,[4] agents discovered additional currency hidden inside the pockets and between several pairs of jeans, and in white envelopes similar to the ones found in Oliveras' carry-on luggage. (Compl. ¶ 19; Am. Compl. ¶ 20). In total, the currency seized from Oliveras' luggage and person amounted to $61,894.00. (Compl. ¶ 20; Am. Compl. ¶ 22).

After checking Oliveras' bags, the agents boarded JetBlue Flight 703 to speak to Mulero, who had been in the bathroom of the plane for approximately 10 to 15 minutes. (Compl. ¶ 22; Am. Compl. ¶ 24). When asked if he had any carry-on luggage, Mulero denied having any bags on the plane, but the flight attendants identified a computer bag and suitcase in the overhead compartment as belonging to Mulero. (Compl. ¶ 23; Am. Compl. ¶ 25). Mulero thereafter admitted these were his bags and consented to a search. (Compl. ¶ 23; Am. Compl. ¶ 25). During the search, the agents discovered United States currency concealed throughout Mulero's clothes and in white envelopes similar to those found hidden in Oliveras' luggage. (Compl. ¶ 24; Am. Compl. ¶ 26). The agents also found 49 blank money orders in various denominations with a cumulative value of approximately $35,900.00 in Mulero's computer bag. (Compl. ¶ 25; Am.

---

[4] A third bag, also checked by Oliveras, remained on the plane and, when no one claimed the bag upon its arrival in Puerto Rico, the bag was intercepted by DEA and searched pursuant to a warrant. Inside, agents found $21,600.00, which was seized and forfeited as part of a separate forfeiture action in Puerto Rico. (Am. Compl. ¶ 23). See United States v. $21,600.00 in United States Currency, No. 3:13 CV 1531 (D.P.R.).

3

Compl. ¶ 27).

Pursuant to Mulero's consent, the agents also searched Mulero's two checked bags, finding additional currency hidden in clothes and white envelopes, which the government alleges is consistent with the packaging of narcotics proceeds. (Compl. ¶ 26; Am. Compl. ¶ 28). Agents found additional currency in Mulero's pants pockets, also enclosed in white envelopes, and secured with rubber bands. (Compl. ¶ 26; Am. Compl. ¶ 30). A Nassau County narcotics detection K-9, "Sammy," positively alerted to the odor of narcotics on the currency seized from Mulero's carry-on luggage and person. (Compl. ¶ 31; Am. Compl. ¶ 32). Sammy also alerted positively to the currency taken from Oliveras' checked luggage.[5] (Compl. ¶ 31; Am. Compl. ¶ 32).

Mulero had no documents with him indicating the source of the currency, but told the agents that the currency "was from Pennsylvania." (Compl. ¶ 27; Am. Compl. ¶ 29). He also stated that he was unaware of the amount of the currency. (Compl. ¶ 27; Am. Compl. ¶ 29). Mulero told the agents that he was a co-owner of a company called "CMR Contracting," located in Puerto Rico, but he refused to provide any information about the nature of its business, and he made no claim that the money was related to CMR Contracting's business. (Compl. ¶ 29; Am. Compl. ¶ 31). In total, the funds seized from Mulero consisted of $103,710.00 in currency, and $35,900.00 in money orders. (Compl. ¶ 30; Am. Compl. ¶ 33).

---

[5]A different canine positively alerted to the currency seized from Oliveras' luggage in Puerto Rico. (Am. Compl. ¶ 23).

B. The Complaint and Proposed Amended Complaint

On September 6, 2013, the government filed a Verified Complaint in Rem, seeking to forfeit the $103,710.00 in United States currency and the 49 money orders with a combined value of $35,900.00 which had been seized from Mulero. (Compl. ¶¶ 1, 30, 33). The First Claim for Relief sought forfeiture of the currency in Mulero's possession based on alleged violations of 21 U.S.C. § 881(a)(6), as monies "furnished or intended to be furnished in exchange for a controlled substance . . . [and] proceeds traceable to such an exchange" used or intended to be used to facilitate a violation of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 et seq. (Id. ¶¶ 46-47; see also id. ¶¶ 38, 42).

The Second Claim for Relief in the initial Complaint sought to forfeit the money orders in Mulero's possession as property "involved in violations of, or attempts to violate, 31 U.S.C. § 5324." (Id. ¶¶ 49-50). Under 31 U.S.C. § 5325(a) and 31 C.F.R. § 1010.415, a financial institution is required to obtain and record certain information from the purchaser of a money order. Among other things, domestic financial institutions are required to file currency transaction reports ("CTRs") for cash transactions over $10,000; these CTRs include the identity of the individual who conducted the transaction. (Id. ¶¶ 8, 9, 38). According to the Complaint, individuals engaged in illegal activities, such as narcotics trafficking and money laundering, often "structure" their purchase of money orders in amounts less than $3,000 to avoid the filing of a CTR and the requirement that the purchaser provide identification. (Id. ¶ 7). Often individuals aware of the reporting requirements make multiple cash transactions in less than $10,000 on the same day or consecutive days. (Id. ¶ 11). Pursuant to 31 U.S.C. § 5324, it is a crime for an individual to engage in structuring, and 31 U.S.C. § 5317 provides for the forfeiture

5

of any property involved in violations of 31 U.S.C. §§ 5324 or 5313. (Id. ¶¶ 12-13).

The government alleges that all but one of the 49 money orders in Mulero's possession were purchased on February 2, 2013 and February 3, 2013 from 17 locations in Allentown, Pennsylvania. (Id. ¶¶ 36, 37). All of the money orders were purchased in amounts no greater than $1,000 and were left blank, which the government alleges is consistent with their use as "a defacto currency" in the narcotics trade. (Id. ¶¶ 35, 36). Given that these money orders were purchased over a two-day period, involving an aggregate sum of over $10,000, which would normally trigger the filing of a CTR, the government alleges that these were structured money orders subject to forfeiture under Section 5324. (Id. ¶¶ 7, 42).

The proposed Amended Complaint continues to seek forfeiture of the amounts seized from Mulero, but now also seeks forfeiture of the currency seized from Oliveras on the same grounds. In the First Claim for Relief in the Amended Complaint, the government seeks forfeiture of the currency seized from both Mulero and Oliveras, pursuant to 21 U.S.C. § 881(a)(6), as monies "furnished or intended to be furnished in exchange for a controlled substance . . . [or] proceeds traceable to such an exchange" used or intended to be used to facilitate a violation of the CSA. (Am. Compl. ¶¶ 5, 54, 55). In support of this claim, the government alleges that the funds were being transported from New York, a source city for narcotics proceeds, to Puerto Rico, a source city for narcotics. (Id. ¶ 34). The Amended Complaint further alleges that the denominations of the seized currency, which included a large proportion of $20 bills (4,213 $20 bills were seized from Mulero, and 2,672 $20 bills were seized from Oliveras) (id. ¶¶ 22, 35), are consistent with the practice of narcotics dealers who conduct their transactions in cash and "[a] disproportionate number of $20 bills is indicative of cash

6

proceeds of narcotics trafficking." (Id. ¶ 36). Apart from adding claims to forfeit the money seized from Oliveras, the Amended Complaint does not substantially change the factual allegations of the Complaint or add any other additional claims.

## DISCUSSION

A.  Motion to Amend - Standard of Review

The Federal Rules of Civil Procedure provide that parties may amend pleadings as a matter of course if: 1) the amendment is made within 21 days after service of the initial pleading; or 2) where "the pleading is one to which a responsive pleading is required," the amendment is made within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend a pleading only by leave of the court or by written consent of the adverse party. Fed. R. Civ. P. 15(a)(2). The Rule further provides that "[t]he court should freely give leave when justice so requires," id., and courts have construed this directive liberally. See Foman v. Davis, 371 U.S. 178, 182 (1962); see also Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 283 (2d Cir. 2000), cert. denied, 531 U.S. 1035 (2000); Chapman v. YMCA of Greater Buffalo, 161 F.R.D. 21, 24 (W.D.N.Y. 1995) (noting that "[t]he stated purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim").

Although the decision to grant a party's motion to file an amended pleading lies within the trial court's discretion, see Foman v. Davis, 371 U.S. at 182; see also Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); In re 'Agent Orange' Prods. Liab. Litig., 220 F.R.D.

7

22, 24 (E.D.N.Y. 2004), aff'd, 517 F.3d 76 (2d Cir. 2008), cert. denied, Isaacson v. Dow Chemical Co., 555 U.S. 1218 (2009), in considering whether to grant a motion to amend, the court should consider a number of factors, "including undue delay, bad faith, undue prejudice to the opposing party, or futility," or whether the amendment is "'unlikely to be productive.'" In re 'Agent Orange' Prods. Liab. Litig., 220 F.R.D. at 24 (quoting Ruffalo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)); see also Foman v. Davis, 371 U.S. at 182; SCS Commc'ns, Inc. v. Herrick Co., Inc., 360 F.3d 329, 345 (2d Cir. 2004); Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y. 1994) (opining that the "party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial") (citation omitted).

B. Analysis

The government argues that the Court should grant its motion to amend because the events surrounding the seizure of Oliveras' and Mulero's funds arose from the same core of operative facts, in that all of the assets at issue were seized during the investigation on February 4, 2013, at the same location, from individuals traveling together on the same flight. (Gvt Mem.[6] at 4-5). Indeed, in his deposition, Mulero not only testified that he had an ownership interest in the funds being carried by Oliveras, because approximately $21,000 belonged to him (Mulero Dep.[7] at 62), but he also admitted that he and Oliveras were travel companions on February 4, 2013, traveling on the same flight and checking their bags together. (Id. at 64, 92-93).

---

[6] Citations to "Gvt Mem." refer to the Government's Memorandum of Law in support of its motion to amend its complaint, dated July 31, 2014.

[7] Citations to "Mulero Dep." refer to the transcript of the deposition of Alvin Mulero-Rosario, attached as Exhibit A to the Silverman Declaration.

Moreover, Mulero testified that he paid for Oliveras' travel expenses. (Id. at 92-93).

The government further contends that the currency seized from both Mulero and Oliveras was packaged in the same manner, in white envelopes, secreted in clothing compartments and numerous pieces of luggage. (Am. Compl. ¶¶ 16, 20, 23, 26, 27, 28, 30). Canines alerted to the odor of narcotics on the currency seized from both Mulero and Oliveras. (Id. ¶¶ 23, 32). Both men initially tried to conceal the funds they were carrying by denying that they possessed substantial sums of currency (id. ¶¶ 15, 25), and Oliveras tried to deny that he was traveling with Mulero. (Id. ¶ 19).

Finally, the government asserts that both men claimed that the purpose of their trip in February 2013 was to attend auctions in New York and Pennsylvania. (Gvt Mem. at 6). The government contends that it will demonstrate that neither Mulero or Oliveras attended such auctions, and in fact, the auctions were not scheduled to occur during the relevant time period. (Id.) The government also points out that Mulero's business, AMR Trucking,[8] which employed Oliveras, reported approximately $104,000 in total profits for a five year period – an amount substantially less that the currency and money orders Mulero possessed on February 4, 2013. (Id. at 6 n.4). Thus, the government argues that the defense in this action should be tested in one action, not two.

Mulero objects to the government's proposed amendment, arguing that the government's request "is not only late, it's also against its own acts," in that the government has been aware of

---

[8]The Amended Complaint alleges that at the time of the seizure, Mulero told the agents he was a co-owner of a company called "CMR Contracting." (Am. Comp. ¶ 31). However, at his deposition, Mulero claimed that he owned a company called "AMR Trucking." (See Mulero Dep. at 30).

9

Oliveras' existence since "day one." (Opp.⁹ at 3). Mulero contends that Oliveras made a timely claim for the $61,894 seized from him but that the DEA failed to follow "the Due Process of Law." (Id.) Mulero alleges that "the improper notification on the case is the reason why the DEA sent a new notification after having closed the case and seized the assets administratively." (Id.) Mulero contends that this is an issue unique to Oliveras' situation and would cause unreasonable delay in processing Mulero's claim. (Id.) He further argues that the District of Puerto Rico is also separately pursuing a forfeiture action with respect to the $21,600 that was seized from Oliveras' bag in Puerto Rico, and Mulero questions why those two cases were not joined. (Id. at 3).

Despite Mulero's claim of ownership to some of Oliveras' currency, Mulero argues that the parties in controversy are not the same; that the assets are not the same and do not belong to the same person; and that the events leading to the intervention and seizure of Oliveras' currency were "independent and not related to the events that prompted the seizure of the assets of the case at bar." (Id. at 2).

Finally, Mulero argues that the amendment will not only result in delay while the government undergoes discovery with respect to Oliveras' claim, but also that combining the two cases will prejudice Mulero's claim because Oliveras does not have the same type of evidence to support his claim, and any weakness in Oliveras' case would weaken Mulero's claim as well. (Opp. at 2-4).

In response, the government reiterates its argument that the claims arise from the same set

---

⁹Citations to "Opp." refer to Mulero's "Motion in Opposition to Request to Amend the Complaint," dated June 23, 2014.

10

of operative facts. (Reply[10] at 2-3). Not only have both Mulero and Oliveras testified that part of the funds carried by Oliveras belong to Mulero, but the testimony is clear that both men were involved in the same activities while in New York and Pennsylvania. Oliveras testified that he worked for Mulero's business and has known Mulero for "many years." (Oliveras' Dep.[11] at 12-13). He also testified that he traveled with Mulero to buy equipment and that his plane ticket was purchased by Mulero. (Id. at 20, 24-25, 27). Finally, he testified that he purchased money orders in Pennsylvania and traveled back to Puerto Rico with cash packed in envelopes, some of which belonged to Mulero. (Id. at 23, 29-30).

The case law is clear that where the existing claim and the proposed amendment arise from the same core of operative facts, a motion to amend should be granted. See Hanlin v. Mitchelson, 794 F.2d 834, 841 (2d Cir. 1986); see also United States v. U.S. Currency in Amount of One Hundred Forty-Six Thousand, Eight Hundred Dollars, No. 96 CV 4482, 1997 WL 269583, at *7 (E.D.N.Y. Apr. 28, 1997). Here, based on the testimony of both Mulero and Oliveras, viewed in light of the events that occurred at the time of the seizure, it is apparent that Mulero purchased Oliveras' plane tickets, and the two men were traveling together. They both were carrying currency packaged in the same fashion, could not provide a satisfactory explanation as to the source of the cash and, perhaps most critically, some of the currency being carried by Oliveras has been claimed to belong to Mulero. Moreover, the facts connecting the

---

[10]Citations to "Reply" refer to the Government's "Reply Memorandum of Law in Support of Plaintiff's Motion to Amend the Complaint" dated September 16, 2014.

[11]Citations to "Oliveras' Dep." refer to the transcript of the deposition of Roberto Oliveras-Calderon, attached as Exhibit F to the Reply Declaration of Matthew Silverman dated September 16, 2014.

11

currency seized from Oliveras to the currency seized from Mulero were alleged in the original Complaint. Given that the original claim and the proposed amendment arise out of the same set of operative facts, the government's motion to amend should be granted unless Mulero demonstrates prejudice resulting from the amendment. See Fariello v. Campbell, 860 F. Supp. at 70 (holding that it is the burden of the party opposing the amendment to establish prejudice if the amendment is allowed).

Here, while Mulero argues that he will be prejudiced by the delay that will result in such an amendment, the courts have held that delay alone is not a sufficient reason to deny an amendment. United States ex rel Sec'y of Transportation v. Continental Ill. Nat'l Bank & Trust Co. of Chicago, 889 F.2d 1248, 1254 (2d Cir. 1989); Bryant v. Steele, No. 13 CV 5234, 2014 WL 6909012, at *4 (E.D.N.Y. Dec. 9, 2014). In fact, the government contends that after Oliveras filed his claim to the funds in March 2014, the government had 90 days to initiate a judicial action. 18 U.S.C. § 983(a)(3)(A). On June 18, 2014, the government filed a letter proposing the amendment. Since the government has already deposed Oliveras, there does not appear to be any significant additional discovery that would delay Mulero's claims from being heard.

Moreover, the government contends that even if the motion is found to have been delayed, Mulero must demonstrate prejudice, which he has not done at this time.[12] The only

---

[12] In response to Mulero's accusation that there was some deficiency in the DEA's notification of the forfeiture to Oliveras, the government contends that the addresses provided by Oliveras were invalid and to date the government has no functional address to contact Oliveras. (Gvt. Mem. at 7, n.5). The government also contends that Mulero has no standing to raise this due process claim on behalf of Oliveras and that, in any event, if Oliveras had challenged the actions of the DEA, he would be subject to a judicial civil forfeiture action, which is what this action entails. (Id.)

claim of prejudice is that Oliveras' claim to the currency is weaker and combining the cases will weaken Mulero's claim as well. It is unclear what the basis for this argument is and, in any event, given that the operative facts from which the claims arise are the same, the Court finds that this outweighs any possible prejudice cited by Mulero.

Accordingly, the Court grants the government's motion to amend the Complaint. The Government is to file its amended complaint by **February 27, 2015**.[13] Defendant is to file a responsive pleading by **March 9, 2015**. A status conference before the undersigned is scheduled for **March 25, 2015 at 3:00 p.m.**

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
February 19, 2015

/s/ CHERYL POLLAK

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

---

[13] Consistent with this Court's Order of July 30, 2014, the government's deadline to file a civil action for the funds seized from Oliveras is extended until February 27, 2015, pursuant to 18 U.S.C. § 983(a)(3)(A).

13